```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF PENNSYLVANIA


VOEST ALPINE INDUSTRIES,      )
INC.,                         )
            Plaintiff,        )
                              )   Civil Action No. 02-1605
       v.                     )   Judge David S. Cercone/
                              )   Magistrate Judge Sensenich
ZURICH AMERICAN INSURANCE     )   Re: Doc. No. 34
COMPANY,                      )
                              )
            Defendant.    ____)
```

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

I.   RECOMMENDATION

     It is recommended that the motion for partial summary judgment filed by Defendant be granted in its favor on the issue that the West Virginia litigation was not reported to Zurich and is not covered under the Zurich policy.  It is further recommended that the motion for partial summary judgment filed by Defendant be granted in its favor on the issue that Voest has the burden of proving that the amounts it paid under the settlement agreement achieved as a result of the February 2002 mediation relate to matters covered under the Zurich policy.

II.  REPORT

     Plaintiff, Voest Alpine Industries, Inc. ("Voest"), a mechanical engineering firm, filed the instant diversity action against Defendant, Zurich American Insurance Co. ("Zurich").  In

Count I, Voest is seeking a declaration of the rights, duties and liabilities of the parties with respect to a request for indemnification under a professional liability policy issued by Zurich.  Counts II and III allege claims against Zurich for breach of contract and bad faith, respectively.

Zurich has filed a motion for partial summary judgment, seeking judgment in its favor that (1) the West Virginia litigation was not reported to it and is not covered under its policy; and (2) Voest has the burden of proving that the amounts it paid under the settlement agreement achieved as a result of the February 2002 mediation relate to matters covered under the Zurich policy.  For the reasons that follow, Zurich's motion for partial summary judgment should be granted.

  A. <u>Rule 56(c) Summary Judgment Standard</u>

Summary judgment is appropriate if, resolving all inferences and doubts in favor of the non-movant, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  F<small>ED</small>.R.C<small>IV</small>.P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact.  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

  B. <u>Background</u>

In May of 2000 Voest contracted with Pechiney Rolled Products, LLC ("Pechiney") to perform engineering and construction services for modernization and modification of Pechiney's existing hot and cold rolling mill facilities. (Am. Compl. (Doc. No. 33, Ex. A) ¶ 7.)  Voest performed all of the contracted design work but subcontracted construction engineering, equipment installation, and construction management responsibilities to Stevens Painton Corporation ("SPC").  (*Id.* ¶ 8.)  SPC subcontracted with Industrial Contractors, Inc. ("ICI") for piping and electrical work.  (Pl.'s Br. in Opp'n (Doc. No. 44) Ex. I, ¶¶ 7&8.)  The project encountered problems that resulted in increases in the scope of the original project.

(Am. Compl. ¶¶ 10 & 11.)  On May 22, 2001, SPC filed an action against Voest in the Court of Common Pleas of Washington County, Pennsylvania, relating to the construction engineering services and construction services it performed at Pechiney under its contract with Voest.  (Pl.'s Br. in Opp'n, Ex. B, Tab A.)  On May 29, 2001, ICI filed a "Complaint for Breach of Contract and to Foreclose Subcontractor's Lien" in the Circuit Court of Jackson County, West Virginia.  (*Id.*, Ex. I.)  Pechiney, Voest, and SPC were named defendants in that action.  (*Id.*)  Pechiney filed a cross-claim in that action against Voest on October 16, 2001, alleging nineteen claims for breach of contract as well as claims for offset, breach of the duty of good faith and fair dealing, and estoppel and detrimental reliance.  (Def.'s Reply Br. (Doc. No. 46) Ex. A.)  On October 23, 2001 SPC filed claims for enforcement of mechanic's lien and breach of implied contract against Pechiney in the Circuit Court of Jackson County, West Virginia.  (Pl.'s Br. in Opp'n, Ex. I.)[1]  On February 12 and 13, 2002 the parties participated in mediation, which had been ordered by the West Virginia Court in the ICI lawsuit.  (*Id.*, Ex. B, Tab B at 3.)  On February 22, 2002 ICI, Pechiney, Voest, and SPC entered into a settlement agreement, purporting to

---

[1] The May 29, 2001 complaint filed by ICI, Pechiney's October 16, 2001 cross-claim against Voest, and SPC's October 23, 2001 action against Pechiney will be referred to collectively as "the West Virginia litigation."

>            settle finally for all time all of their
>            claims, disputes and differences which
>            they ever had, now have or may ever have
>            in the future against each Party arising
>            out of, resulting from or in any way
>            related, directly or indirectly, to the
>            Project, Contract, Subcontract, Construction/
>            Installation Contract, ICI Mechanic's
>            Lien, ICI Lawsuit, [Voest], SPC and
>            [Pechiney] Cross/Counterclaims, SPC
>            Mechanic's Lien, SPC Lawsuit, Washington
>            County Action, [Voest] Counterclaim and/or
>            the Agreement.

(*Id*. at 3-4.)

   C. <u>Facts Not in Dispute</u>

Zurich issued Architects and Engineers Professional Liability Policy No. EOC 295075101 to VA Tech America Corporation.  (Am. Compl. (Doc. No. 33, Ex. A) ¶ 18; Answer to Am. Compl. (Doc. No. 39) ¶ 18.)  The policy was in effect from April 4, 2001 to April 4, 2003.  (Am. Compl. ¶ 20; Answer ¶¶ 19-21.)  It limited Zurich's liability to $5,000,000 per claim and provided for a deductible of $500,000 per claim.  (Am. Compl. ¶ 21; Answer ¶¶ 19-21.)  Voest was a named insured under the policy.  (Am. Compl. ¶ 19; Answer ¶¶ 19-21.)

On May 22, 2001 SPC filed an action against Voest in the Court of Common Pleas of Washington County, Pennsylvania, relating to construction engineering services and construction services it performed at Pechiney under its contract with Voest. In its complaint, SPC alleged claims for breach of contract, breach of implied contract, unjust enrichment, detrimental

reliance, misrepresentation and wrongful inducement, negligence, and breach of implied duty of good faith and fair dealing. (Pl.'s Br. in Opp'n, Ex. B, Tab A.)  In a letter dated June 14, 2001, Don Watts ("Watts"), General Manager - Commercial of Voest, forwarded the SPC summons in the Washington County, Pennsylvania, Litigation to Jim Firrell of Acordia, Voest's insurance broker, and instructed him to place Zurich on notice of the summons and of Voest's intention to make a claim under the policy.  (Ex. H and Watts Aff., Ex. I, ¶ 8, and Watts Dep., Ex. J at 18, attached to Pl.'s Counterstatement of Material Facts (Doc. No. 45).)  In a letter dated June 21, 2001, Zurich acknowledged receipt of the information regarding SPC's claim and advised that the SPC claim had been assigned to Professional Liability Counsel Thomas Gerecs ("Gerecs").  (Am. Compl. ¶ 29; Answer ¶ 29.)  In January 2002 Gerecs requested a status report on the SPC claim.  (Am. Compl. ¶ 35; Answer ¶ 35.)  On February 12 and 13, 2002, ICI, Pechiney, Voest, and SPC participated in mediation, which had been ordered by the West Virginia Court in the ICI lawsuit.  (Pl.'s Br. in Opp'n, Ex. B, Tab B at 3.)  On February 22, 2002 the parties entered into a universal settlement agreement.  (*See id*. at 3-4.) Since that time, Zurich has refused and continues to refuse to contribute to the settlement on behalf of Voest and to pay Voest's defense costs.  (Am. Compl. ¶¶ 45 & 55; Answer ¶¶ 45 & 55.)

D. <u>Discussion</u>

Zurich requests judgment in its favor that the West Virginia litigation was not reported to it and is not covered under its policy.  Plaintiff's Amended Complaint, however, contains no allegations regarding the West Virginia litigation. Rather, it seeks reimbursement for settlement of the claims SPC filed against it in the Court of Common Pleas of Washington County, Pennsylvania, on May 22, 2001, which it reported to Zurich and which were included in a universal settlement reached through court ordered mediation of the West Virginia litigation. (See Am. Compl.)  Nevertheless, in its response to Zurich's motion for summary judgment, although it does not assert categorically that it notified Zurich of the West Virginia Litigation, Voest contends that because Zurich approved its designation of George Foster ("Foster") to represent it in the suit filed by SPC in Washington County, Foster, by reason of having obligations to both Zurich and Voest, was acting as attorney for both Voest and Zurich.  (Pl.'s Br. in Opp'n (Doc. No. 44) at 6.)  As such, Voest argues that if there was a failure of notice regarding the West Virginia litigation, because Foster was acting as defense counsel for Zurich, the failure of notice must be attributed to Zurich.[2]  (*Id.* at 8.)  Voest, however, has

---

[2]It is undisputed that Foster was aware of the West Virginia litigation.  He represented Voest in that litigation and
(continued...)

not cited any case law in support of this argument.  Nor has Voest cited any case law in support of its argument that Zurich, pursuant to its internal Liability Best Practices-Product Management guidelines, had a duty to manage Foster so as to keep Zurich fully informed about the claim prior to the commencement of mediation.  (*Id.*)  Voest's arguments notwithstanding, Zurich contends that Voest did not report the West Virginia litigation; therefore, pursuant to the provisions of the insurance policy, the West Virginia Litigation is not covered under the Zurich policy.

"[T]he proper interpretation of a contract is a question of law to be determined by the court in the first instance."  *J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 681 (Pa. Super. Ct. 2002) (citing *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).  Contract interpretation requires a determination of the parties' intent.  *Delavau*, 810 A.2d at 681.  Furthermore,

> It is well-settled under Pennsylvania contract law that the meaning of a clear and unambiguous written contract and the intent of the contracting parties must be determined from the four corners of the contract. However, if the written contract is ambiguous, a court may look to extrinsic

---

[2](...continued)
participated in the court-ordered mediation that resulted in a settlement of all the parties' claims.

8

>    evidence to resolve the ambiguity and
>    determine the intent of the parties. . . .
>    [A] contract is ambiguous under Pennsylvania
>    law
>
>> if, and only if, it is reasonably
>> or fairly susceptible of different
>> constructions and is capable of
>> being understood in more senses
>> than one and is obscure in meaning
>> through indefiniteness of
>> expression or has a double meaning.
>> A contract is not ambiguous if the
>> court can determine its meaning
>> without any guide other than a
>> knowledge of the simple facts on
>> which, from the nature of the
>> language in general, its meaning
>> depends; and a contract is not
>> rendered ambiguous by the mere fact
>> that the parties do not agree on
>> the proper construction.

*Glenn Distributors Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 300 (3d Cir. 2002), quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 613 (3d Cir. 1995) (internal citations omitted).  See also, *Bohler-Uddeholm America, Inc. v. Ellwood Group*, 247 F.3d 79, 93 (3d Cir. 2001). *cert. denied*, 534 U.S. 1162 (2002).

Because it is undisputed by the parties that the professional liability insurance policy at issue here is a "claims-made and reported" policy, it is clear that the parties intended to enter into this type of contract.  Furthermore, the contract provides specifically that "[t]his policy provides claims-made coverage.  Claims must first be made against the insured during the policy period and must be reported to the

company during the policy period or the extended reporting period, if exercised." (Pl.'s Counterstatement of Material Facts (Doc. No. 45) Ex. C, Tab C; Def.'s Concise Statement of Material Facts (Doc. No. 36) Ex. C.) The policy further provides, in part, that Zurich will pay on behalf of the "Insured" all sums in excess of the deductible provided that "[Voest] give[s] prompt notice of a "Claim", but not later than 60 days after expiration or termination of this policy, in accordance with the Notice of Claims conditions of this policy." (*Id*.) Thus, the contract is clear and unambiguous that in order for liability to attach to Zurich, a claim must be made against Voest during the policy period or within 60 days after the expiration or termination of the policy, and that claim must also be reported to Zurich during that time. Here, there is no genuine issue as to the fact that the West Virginia litigation was not reported to Zurich in accordance with the requirements of the insurance policy. The policy stated unambiguously the following requirements for Notice of Claim:

> In the event of a "Claim", prompt notice containing particulars sufficient to identify you or any "insured" involved and reasonably obtainable information with respect to time, place and circumstances, and the names and addresses of any injured parties and of available witnesses, shall be given by or for you to us. In the event of oral notice, you agree to furnish a written notice and send us copies of all demands or legal documents as soon as possible. Written notice must be provided to us no later than 60 days after

>       the expiration or termination of the policy.
>       Your knowledge of "Claim" shall be deemed to
>       have occurred when a principal, partner,
>       director, or executive officer first learned
>       of the "Claim."

(*Id.*)

Voest has not produced any evidence that it complied with the notice requirements of the policy relative to the West Virginia litigation.  It has failed to rebut the following deposition testimony of several witnesses, proffered by Zurich to demonstrate that Zurich was not notified of the West Virginia litigation.  First, Foster, who represented Voest in the Washington County litigation as well as the West Virginia Litigation, testified in his deposition that he did not notify Zurich directly of the October 23, 2001 complaint filed in West Virginia by SPC against Pechiney, but assumed that on his instructions Watts or Mike Grumet ("Grumet") notified Zurich. (Foster Dep. at 25-26, attached as Ex. K to Pl.'s Counterstatement of Material Facts (Doc. No. 45.)  Foster also testified that in their discussion during a February 1, 2002 phone conversation, Gerecs indicated to him that he knew that there were multiple actions.  (*Id.*)  He did not know, however, whether Gerecs "knew specifically about the Washington action or the West Virginia action or the liens."  (*Id.*)  In addition, Foster testified that he could not specifically say that he told Gerecs "that a West Virginia judge had directed the parties into

11

mediation." (*Id.*)  Second, Don Watts, general manager of Voest's commercial division, testified at his deposition that he did not recall forwarding a copy of the notice of subcontractor lien filed by ICI in Jackson County, West Virginia, to Zurich.  (Watts Dep. at 14-15, attached as Ex. 3 to Def.'s Concise Statement of Material Facts (Doc. No. 36.)  He further testified that he did not forward a copy of the complaint filed by SPC in Jackson County, West Virginia, to Zurich.  (*Id.* at 17.)  Watts testified that he did not contact Voest's insurance broker regarding SPC's mechanic's lien filed in West Virginia.  (*Id.* at 18.)  Nor did he have any knowledge that Zurich knew about the SPC lawsuit or the Pechiney crossclaim before February 2002. (*Id.* at 21.)  Third, Grumet, a Voest employee, testified that he had no involvement in communications regarding litigation arising out of the Pechiney project with Voest's insurance carrier (Id. at 23) and he did not send a copy of the ICI lawsuit to Voest's insurance broker. (Grumet Dep. at 27, attached as Ex. 4 to Def.'s Concise Statement of Material Facts.)  Fourth, Trevor Carr testified that he had no knowledge that documents filed in the West Virginia litigation were forwarded to Zurich at any time prior to the 2002 mediation. (Carr Dep. at 29-30, attached as Ex. 5 to Def.'s Concise Statement of Material Facts.)  He did not know what was communicated to Zurich because those matters were being handled by Watts.  (*Id.* at 35-37.)  Finally, Voest's insurance broker,

12

Louis Locante, denied any knowledge as to whether information related to the West Virginia litigation was reported to Zurich before the mediation, and denied any knowledge as to whether Zurich had knowledge of that litigation.  (Locante Dep. at 25-27, attached as Ex. 6 to Def.'s Concise Statement of Material Facts.)

Furthermore, even it can be inferred that the West Virginia litigation was reported to Zurich orally, the insurance policy still provides that Voest "agree[s] to furnish a written notice and send us copies of all demands or legal documents as soon as possible."  (Pl.'s Counterstatement of Material Facts (Doc. No. 45) Ex. C, Tab C; Def.'s Concise Statement of Material Facts (Doc. No. 36) Ex. C.)  The record lacks any evidence that Voest furnished any written information about the West Virginia litigation to Zurich.

Voest also argues, however, that it was not necessary to report the West Virginia Litigation because it was simply a mechanic's lien and no relief was sought from Voest.  The policy defines a claim as "any demand received by [Voest] seeking 'Damages' or 'Professional Services' and alleging liability or responsibility on Voest's part."  (*Id*.)  On May 29, 2001, ICI filed a "Complaint for Breach of Contract and to Foreclose Subcontractor's Lien" in the Circuit Court of Jackson County, West Virginia.  (Pl.'s Br. in Opp'n, Ex. I.)  ICI named Pechiney, Voest, and SPC as defendants in that action, but did not request

any relief from Voest.  (*Id*.)  Even if Voest is correct in arguing that it was not required to report this litigation because no relief was sought from Voest, Pechiney filed a cross-claim in that action against Voest on October 16, 2001, alleging nineteen claims for breach of contract as well as claims for offset, breach of the duty of good faith and fair dealing, and estoppel and detrimental reliance.  (Def.'s Reply Br. (Doc. No. 46) Ex. A.)  Voest did not report this cross-claim to Zurich, a necessary requirement for making a claim under the terms of the insurance policy.  Consequently, the West Virginia litigation is not covered under the policy.  Accordingly, Zurich's motion for summary judgment should be granted as to this issue.

   Zurich also seeks judgment in its favor on the issue that Voest has the burden of proving that the amounts it paid under the settlement agreement achieved as a result of the February 2002 mediation relate to matters covered under the Zurich policy.  Voest agrees that it will have to prove at trial that the amounts it paid were covered under the Zurich policy. There being no genuine issue of material fact as to this issue, Defendant's motion for summary judgment should be granted.

III. CONCLUSION

   For the reasons discussed above, it is recommended that the motion for partial summary judgment filed by Defendant be granted in its favor on the issue that the West Virginia

14

litigation was not reported to Zurich and is not covered under the Zurich policy.  It is further recommended that the motion for partial summary judgment filed by Defendant be granted in its favor on the issue that Voest has the burden of proving that the amounts it paid under the settlement agreement achieved as a result of the February 2002 mediation relate to matters covered under the Zurich policy.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                         *s/Ila Jeanne Sensenich*
                                         ILA JEANNE SENSENICH
                                         U.S. Magistrate Judge

Dated:  August 9, 2005

Notice sent electronically or via U.S. mail to:

The Honorable David S. Cercone
United States District Judge

Ralph A. Finizio, Esq.
Pepper Hamilton, LLP
One Mellon Bank Center, 50th Floor
500 Grant Street
Pittsburgh, PA  15222

Paul M. Lurie, Esq.
Reid A. Schultz, Esq.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, IL  60606

Arthur J. Murphy, Jr., Esq.
Donald G. Lucidi, Esq.
Murphy Taylor, L.L.C.
326 Third Avenue
Pittsburgh, PA  15222