IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VOEST ALPINE INDUSTRIES, INC., | ) |
| Plaintiff, | ) |
| v. | ) 2:02cv1605 |
| ZURICH AMERICAN INSURANCE COMPANY, | ) Electronic Filing |
| Defendant. | ) |

## MEMORANDUM

On March 30, 2007, this court issued an order denying plaintiff's motion for summary judgment. This constitutes the court's rationale in explanation of that order.

Plaintiff's motion seeks to establish entitlement to damages in the form of coverage and bad faith punitive damages with fees and costs based on two basic propositions: (1) that Pennsylvania law requires an insurer to establish prejudice in order to rely on an insured's failure to comply with a consent-to-settle clause embedded in a claims-made professional liability policy; and (2) defendant has breached its duty to investigate the coverage provided by the policy for a $2.9 million settlement which plaintiff tendered for indemnification pursuant the covered claims/litigation commenced by SPC in the Court of Common Pleas of Washington County. The parties' dispute cannot be resolved as a matter of law at this juncture and accordingly the motion must be denied.

The cases plaintiff cites to establish an insurer's obligation to show prejudice in order to deny coverage based on non-compliance with a consent-to-settle clause do not control the ultimate disposition confronting the court. Those cases are influenced by and derive their jurisprudential foundation from Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRA"). To be sure, over the last several years the Superior Court of Pennsylvania consistently has recognized that in the context of under-insured or un-insured motorist coverage, where the insured settles with a tortfeasor in contravention of a consent-to-settle clause and the insurer cannot demonstrate actual prejudice therefrom, the public policy emanating from the

MVFRA would be frustrated if the insured did not receive the benefits for which he or she has bargained. And the burden to prove prejudice is on the insurer. Nationwide Ins. Co. v. Schneider, 906 A.2d 586, 592 (Pa. Super. 2006) (en banc) (citing and quoting Nationwide Mutual Ins. Co. v. Lehman, 743 A.2d 933, 940-41 (Pa. Super. 2006)). In addition, the United States Court of Appeals for the Third Circuit has noted that the Pennsylvania courts have readily applied the prejudice rule in a variety of insurance contract settings. See Trustees of the University of Pennsylvania v. Lexington Ins. Co., 815 F.2d 890, 897 (1987) ("Pennsylvania courts have already applied the Brakeman rule to other kinds of insurance contracts.") (citing Judge v. Celina Mut. Ins. Co., 449 A.2d 658 (Pa. Super. 1982) (collecting cases)).

The underpinnings of these principles derive from the settled view that consent-to-settle clauses are designed to (1) protect against an insured prejudicing the insurer's interests by impairing its subrogation rights, (2) avoid collusion and (3) ensure the carrier receives the full value of any underlying liability and/or primary policies that also afford coverage. See, e.g., Lehman, 743 A.2d at 941; American States Ins. Co. v. Estate of Braheem, – A.2d – , 2007 WL 152113 (Pa. Super. 2007) (citing in support State Farm Ins. Co. v. Ridenour, 646 A.2d 1188 (Pa. Super. 1994)). And when balanced against the public policy flowing from the MVFLA's requirement that UI and UIM benefits be included in every automobile insurance contract and thus be available when needed, such interests of the carrier cannot be elevated above that of the insured, particularly where the exercise of equitable discretion would not protect the interest the carrier invokes under the particular circumstances. See e.g. Daley-Sand v. West American Ins. Co., 564 A.2d 965, 969-71 (Pa. Super. 1989) (withholding consent to settle based on bald claim of subrogation rights where equity would not recognize the elevation of such rights over those of the insured frustrates the public policy "determined with reference to the 'laws and legal precedents'" pertaining to the MVFRA).

Insurance disputes arising in a setting outside a state's motor vehicle insurance system are not guided by the same public policy considerations. Instead, they implicate the common law of contracts and the state's decisional law involving commercial insurance practices. As the Supreme Court of Minnesota recently explained in a case involving an "exhaustion clause":

> Owner asks us to extend this procedure for resolving an insurer's subrogation rights to first-party property insurance disputes. Schmidt, however, was grounded on the statutory policy of providing full compensation to injured persons under the No-fault Act. We relied upon that policy to declare the insurer's exhaustion clause void and to give greater weight to the insured's right to compensation than to the insurer's right to subrogation.
>
> First-party property insurance claims, on the other hand, are not influenced by the public policies that underlie the No-Fault Act and are governed solely by the contract terms agreed to by the parties. Because there are no public policy considerations that would allow us to override the terms of the policy, we decline to add to or alter those terms by overlying the Schmidt procedures on them. Accordingly, we answer the certified question in the negative.

Schwickert, Inc., v. Winnebago Seniors, Ltd., 680 N.W.2d 79, 83-84 (Minn. 2004); accord Bantz v. Bongard, 864 P.2d 618 622 n. 4 (Idaho 1993) ("Those courts which have held that consent-to-settle clauses are invalid do so because they perceive the clause to be in conflict with their state's uninsured motorist insurance statutes. The courts reason that consent-to-settle clauses are void for public policy because they infringe on the uninsured motorist coverage which is mandated by their respective state statutes.") (collecting cases in support). And while there may be considerable overlap in the policies effectuated in the MVFRA and the principles informing the common law governing insurance disputes, our research has not revealed any sound precedential basis for an unbridled extension of the prejudice requirement (for enforcement of consent-to-settle clauses in the context of uninsured/under-insured motorist coverage) to all insurance policies issued within the Commonwealth. In fact, the Supreme Court consistently has taken a cautionary approach when considering whether to invalidate provisions of a private contract on the ground of public policy. See Minnesota Fire and Casualty Co. v. Greenfield, 855 A.2d 854, 868 (Pa. 2004) ("Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision."); McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 289 (Pa. 2000) ("A Plaintiff must do more than show a possible violation of a statute that implicates only her own interest. The Plaintiff in some way must allege that some public policy of *this* Commonwealth is implicated .... Public Policy of the Commonwealth must be just that, the policy of the Commonwealth."); Hall v. Amica Mutual Ins. Co., 648 A.2d 755, 348 (Pa. 1994) (" It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual

unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring." ); BLaST Intermediate Unit v. CNA Ins. Companies, 674 A.2d 687, 689 (Pa. 1996) (a court should "not lightly invalidate a contract when an assertion is made that the contract violates public policy.").

Furthermore, the highest courts of other states to consider whether a showing of prejudice should be required where the consent-to-settle clause is invoked by the carrier have not been uniform in their resolutions – even in the motor vehicle insurance arena. See Ferrando v. Auto-Owners Mutual Ins. Co., 781 N.E.2d 927, 938 (Ohio 2002) (surveying states that recently have upheld or invalidated consent-to-settle clauses in UIM settings and discussing majority and minority approaches and exceptions thereto); Nationwide Mutual Ins. Co. v. Webb, 436 A.2d 465 (Md. 2002) (contrasting settings where such clauses have been upheld with those where they have been invalidated). Thus, the basis for the extension of the prejudice rule plaintiff proposes is not as solid as plaintiff suggests.

Fortunately, this court need not forge a new path in this case because application of settled law provides a clear road map for resolving the parties' dispute. The core component of plaintiff's claims for relief is that in actuality it has settled nothing more than its liability growing out of the covered claims in the Washington County litigation, and plaintiff is prepared to submit more than superficial evidence to support this central plank underlying its claims. Defendant points to the West Virginia litigation in general and specifically to certain claims, allegations and damages raised therein to advance its position that plaintiff necessarily resolved liability that was not covered by the policy due to plaintiff's late notice on the West Virginia litigation. In addition, plaintiff and SPC did not allocate the global settlement between the Washington County and West Virginia litigation and as a result plaintiff purportedly cannot meet its burden of proofing the settlement was only for covered liability.

It is true, as defendant points out, that resolution of the West Virginia litigation and certain allegations and claims therein presumably had value. But an intractable situation involving the competency of evidence and the burdens of proof does not appear to be presented.

Where an insured settles liability that is based on covered and non-covered claims without a contemporaneous apportionment between the two, then the proper procedure is for the court to make an equitable apportionment of the settlement. Cooper Laboratories, Inc. v. International Surplus Lines Ins. Co., 802 F.2d 667, 674 (3d Cir. 1986). The "apportionment is to be made by the district court on such evidence as was available, despite the potential for testimony colored by hindsight and self-interest." Id. (citing American Home Assurance Co. v. Libbey-Owens-Ford Co., 786 F.2d 22 (1st Cir. 1986)). And this approach is consistent with and required under Pennsylvania law. See 12th Street Gym, Inc. V. General Star Indem. Co., 93 F.3d 1158 (3d Cir. 1996) (approving district court's equitable allocation procedure as consistent with Pennsylvania law).

While the insured bears the burden of apportioning the settlement payment between covered and non-covered claims, the ultimate allocation is a matter that rests with a sound exercise of the court's equitable discretion. International Communication Material Inc. v. Employer's Ins. of Wausau, 1996 WL 1044552 (W.D. Pa. 1996) ("[the insured] must bear the burden of apportioning the settlement payment between covered and noncovered damages."); Cooper Laboratories, 802 F.2d at 674 ("If the district court finds that the hospital's liability rests on two bases – one which is within the policy and one without – then an equitable apportionment between the two grounds must be made."). The allocation is to be made after the parties have had an opportunity to submit their evidence to the court, and, given the factual determinations that must be made, it is inappropriate to undertake such an assessment at summary judgment. American Home Assurance Co., 786 F.2d at 31.

Plaintiff's reliance on defendant's duty to investigate promptly a claim before denying consent to settle likewise is not a basis for imposing liability on defendant at this juncture. Of course, an insurer has an obligation to investigate the reasonableness of a settlement proposed to its insured by a third-party, and may not elevate its interests over that of its insured in any such setting. See Gray v. Nationwide Mut. Ins. Co., 223 A.2d 8, 12 (Pa. 1966) (insurer has heightened duty to investigate the reasonableness of potential settlement of covered liability); Alfiero v. Berks Mut. Leasing Co., 500 A.2d 169, 171-72 (Pa. Super. 1985) (insurer owes duty

of good faith in considering settlement of insured's covered liability); <u>Bolton v. Quincy Mutual Fire Ins. Co.</u>, 730 A.2d 1079, (R.I. 1999) ( "an insurance company has a 'fiduciary obligation to act in the best interests of its insured' and to 'refrain from acts that demonstrate greater concern for the insurer's monetary interest than the financial risk attendant to the insured's situation.'"). And once an insurer has received a request for consent, it cannot as a general matter suspend a decision regarding coverage. <u>See</u> <u>Fisher v. USAA Casualty Ins. Co.</u>, 973 F.2d 1103, 1107 (3d Cir. 1992) ("Nor may an insurer, once presented with a demand for consent, unduly delay its decision regarding coverage."). But except in limited circumstances (such as an insurer's unreasonable exposure of its insured to liability above policy limits), the courts consistently have recognized that insurer misconduct such as a wrongful denial of coverage does not "bring within coverage on an insurance policy risks not covered by its terms, or expressly excluded therefrom." <u>Nationwide Mutual Ins. Co.</u>, 680 A.2d 547, 552 (Md. App. 1996); <u>Broadhead v. Hartford Casualty Ins. Co.</u>, 773 F. Supp. 882, 896 n. 18 (S.D. Miss. 1991) (same). Thus, even assuming defendant unreasonably failed to follow-up and explore the reasonableness of the settlement in question with regard to plaintiff's covered exposure, any such breach cannot create coverage for claims where it did not exist.

It follows that while the court as finder of fact on the equitable allocation may ultimately be convinced that defendant did purposefully fail to investigate the reasonableness of the settlement via the covered claims in the Washington County litigation, the effect of any such breach cannot be assessed until the above allocation has been undertaken and resolved. In this regard, any supposed damages flowing therefrom may ultimately prove to be limited to the success of plaintiff's bad faith claim, for which a jury demand has been made. Thus, although this aspect of plaintiff's claim for breach may ultimately prove to be germane to its claim for bad faith, an assessment of this prong of plaintiff's summary motion cannot conclusively resolve any claim in the litigation at this point in time. Consequently, it is not a matter to be resolved on a motion for summary judgment.

Date: **4-20-07**                                    _/s/ DSCercone_
                                                            David Stewart Cercone
                                                            United States District Judge

cc:     Mary-Jo Rebelo, Esquire
Houston Harbaugh
Three Gateway Center, 22nd Floor
401 Liberty Avenue
Pittsburgh, PA 15222-1005

Paul M. Lurie, Esquire
Reid A. Schultz, Esquire
Brooke D. Anthony, Esquire
Schiff Hardin, LLP
233 South Wacker Drive
6600 Sears Tower
Chicago, IL 60606

Arthur J. Murphy, Jr., Esquire
Donald G. Lucidi, Esquire
Murphy Taylor, L.L.C.
326 Third Avenue
Pittsburgh, PA 15222